UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
GEORGE HEATH,

                    Plaintiff,

   -against-

STEPHEN BANKS, Commissioner of New York
City Human Resources Administration; SCHOOL
SETTLEMENT HOME ATTENDANT
SERVICES CORP.; BE-JENA R. DUMAS,
Director; MCCULLEN GROSS, Coordinator;
ALESIA BROWN, Home Aid Attendant,

                    Defendants.
------------------------------------------------------------x

FILED
U.S. DISTRICT COURT E.D.N.Y.
★ SEP 30 2016 ★
BROOKLYN OFFICE

NOT FOR PUBLICATION
**MEMORANDUM & ORDER**
15-CV-4228 (CBA) (MDG)

**AMON, United States District Judge:**

Pro se plaintiff George Heath brings this action against defendants Stephen Banks, Commissioner of New York City Human Resources Administration; School Settlement Home Attendant Services Corp. ("School"); Be-Jena R. Dumas, Director at School; McCullen Gross, Coordinator at School; and Alesia Brown, Home Aid Attendant at School. Plaintiff contends that defendants unlawfully withheld settlement funds allegedly owed to him and his deceased mother, Marion Dudley. (D.E. # 1 ("Compl.") at 12–13.) Defendants have moved to dismiss the complaint on the grounds that plaintiff lacks standing, arguing that all rights to the settlement agreement were held by Dudley, and that her subsequent death extinguished plaintiff's authority to enforce those rights. (D.E. # 9 ("Defs. Mem.") at 4–5.) For the following reasons, defendants' motion to dismiss is granted.

## BACKGROUND[1]

In May 2011, plaintiff and his mother, Marion Dudley, filed suit against the defendants in New York Supreme Court, County of Kings, seeking $5 million in damages for the unlawful

---

[1] The following facts are drawn from plaintiff's complaint and are assumed to be true for purposes of this motion, except to the extent that any facts are contradicted by documents attached to the complaint. See Rozsa v. May Davis

1

treatment of Dudley by her in-home caregivers. (See Compl., Ex. A.) Plaintiff alleges that the suit was brought both in his capacity as a joint claimant, (Compl. at 10, 13), and as a representative of Dudley through power of attorney. On October 7, 2014, the defendants agreed to enter into a settlement agreement "for no more than $175,000.00." (Id. at 11.)

According to plaintiff, on November 4, 2014, defendant New York City Human Resources Administration ("HRA"), "by way of Centers for Medicare and Medicaid, issued a sudden and unexpected demand for medical reimbursement" under the Second Payer Provision ("SPP") of the Social Security Act "in the amount of $25,000.00." (Id. at 11–12.) In response, plaintiff chose the "statutory option of waiving reimbursement with cause."[2] (Id. at 12.) Subsequently, "[d]efendants thereby withheld payment of the settlement altogether, or for an inordinate and indefinite time period, with no frame of reference in which a decision may be rendered on plaintiffs' [sic] notice of waiver." (Id.)

On March 24, 2015, Dudley passed away while under the care of another home aid attendant. (Id.) Plaintiff claims that to date, defendants have continued to withhold payment of the settlement agreement "on the theory that Dudley has deceased, and that the said notice of waiver regarding SPP is invalid because his position holding power of attorney as the designated beneficiary of Dudley's estate has become invalid due to her death." (Id. at 12–13.) On July 20, 2015, plaintiff filed his complaint with this Court, claiming that defendants have unlawfully withheld the funds of the settlement agreement, both before and after Dudley's death, and that defendants' actions have caused him both emotional and economic harm. (Id. at 13.)

---

Grp., Inc., 187 F. Supp. 2d 123, 128 (S.D.N.Y. 2002), aff'd sub nom., Rozsa v. SG Cowen Sec. Corp., 165 F. App'x 892 (2d Cir. 2006) ("When allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true.").

[2] Plaintiff provides no citation to a provision detailing the "statutory option of waiving reimbursement with cause."

2

## STANDARD OF REVIEW

When considering motions to dismiss under either Rule 12(b)(1) for lack of subject matter jurisdiction or Rule 12(b)(6) for failure to state a claim, the Court ordinarily accepts all allegations in the complaint as true and draws reasonable inferences in favor of the nonmovant. See Atterbury v. U.S. Marshals Serv., 805 F.3d 398, 402 (2d Cir. 2015). When considering a Rule 12(b)(1) motion, the Court is "permitted to rely on non-conclusory, non-hearsay statements outside the pleadings." M.E.S., Inc. v. Snell, 712 F.3d 666, 671 (2d Cir. 2013). "In considering a motion . . . pursuant to Rule 12(b)(6)," the Court "may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." DiFolco v. MSNBC Cable L.L.C., 622 F.3d 104, 111 (2d Cir. 2010). "When allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true." Rozsa, 187 F. Supp. 2d at 128.

A court dismisses an action under Rule 12(b)(1) "if the court lacks the statutory or constitutional power to adjudicate it." Cortlandt St. Recovery Corp. v. Hellas Telecomms., S.A.R.L., 790 F.3d 411, 416–17 (2d Cir. 2015) (internal quotation marks and citation omitted). Because standing "'is an essential and unchanging part of the case-or-controversy requirement of Article III['] . . . [i]f a plaintiff[] lack[s] Article III standing, a court has no subject matter jurisdiction to hear their claim," in which case the Court may grant a motion to dismiss under Rule 12(b)(1). Cent. States Se. & Sw. Areas Health & Welfare Fund v. Merck-Medco Managed Care, L.L.C., 433 F.3d 181, 198 (2d Cir. 2005) (citing and quoting Lujan v. Defenders of Wildlife, 504 U.S. 555, 560 (1992)).

A challenge to standing may also be brought under Rule 12(b)(6) for failure to state a claim. See Thompson v. Cty. of Franklin, 15 F.3d 245, 247 (2d Cir. 1994) ("dismissals for lack of standing may be made pursuant to Fed.R.Civ.P. 12(b)(6) rather than 12(b)(1)"). A court dismisses an action under Rule 12(b)(6) if the complaint lacks "enough facts to state a claim to relief that is plausible on its face." Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007). A complaint must offer more than "labels and conclusions," "formulaic recitation[s] of the elements of a cause of action," or "naked assertions devoid of further factual enhancement." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 555, 557) (internal quotation marks omitted)). In deciding a motion to dismiss, in addition to generally accepting all well-pleaded allegations as true, the Court construes these allegations in the light most favorable to the plaintiff, and draws all reasonable inferences in the plaintiff's favor. Gonzalez v. Hasty, 802 F.3d 212, 219 (2d Cir. 2015).

A complaint filed pro se must be construed liberally and interpreted to raise the strongest claims that it suggests. Hogan v. Fischer, 738 F.3d 509, 515 (2d Cir. 2013). Even a pro se complaint, however, cannot survive a motion to dismiss based merely on "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Harris v. Mills, 572 F.3d 66, 72 (2d Cir. 2009).

## DISCUSSION

### I. Standing

Standing is an "essential and unchanging part of the case-or-controversy requirement of Article III" of the United States Constitution. Lujan, 504 U.S. at 560. The standing inquiry "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975).

At a minimum, in order to have constitutional standing, three requirements must be met. First, the plaintiff "must have suffered an injury in fact . . . ." Cent. States Se. & Sw. Areas Health & Welfare Fund, 433 F.3d at 198 (citing Lujan, 504 U.S. at 560). Second, "there must be a causal connection between the injury and the conduct complained of . . . ." Id. (citing Lujan, 504 U.S. at 560–61). Third, "it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." Id. (citing Lujan, 504 U.S. at 560–61).

The "prudential standing rule . . . normally bars litigants from asserting the rights or legal interests of others in order to obtain relief from injury to themselves." Warth, 422 U.S. at 509. "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Id. at 499. "Although characterized as 'prudential,' these concerns relate to the elements of Article III standing." Montesa v. Schwartz, No. 14-CV-3721, 2016 WL 4728000, at *5 (2d Cir. Sept. 12, 2016) (citing Lexmark Int'l, Inc. v. Static Control Components, Inc., 134 S.Ct. 1377, 1387 n.3 (2014); Lance v. Coffman, 549 U.S. 437, 439 (2007) (per curiam)).

Defendants move to dismiss on grounds that principally implicate the prudential limits on standing. Specifically, defendants assert that plaintiff lacks standing because the claims in the complaint only "implicate Marion Dudley's right to recover the settlement funds[;]" that plaintiff's "rights are not directly involved[;]" and that because plaintiff's mother passed away prior to the filing of this suit, he "is without legal authority to vindicate the decedent's rights herein[,]" (Defs. Mem. at 5). See Warth, 422 U.S. at 499. In response, plaintiff argues that the complaint alleges injuries personal to him and that the breach of the settlement agreement equally implicated his rights as well as Dudley's. (D.E. # 11 ("Pl. Opp.") at 2.) Therefore, in order for the Court to

5

address whether plaintiff has standing to bring this action, the Court must first determine the scope of the claims the plaintiff has asserted in the complaint.

After carefully reviewing the complaint and construing it liberally, see Hogan, 738 F.3d at 515, the Court finds that the complaint contains the following causes of action and requests for relief:

(1) A cause of action that seeks a declaratory judgment that the SPP of the Social Security Act is unconstitutional as a violation of due process, (Compl. at 2–3, 13–14);

(2) A cause of action requesting a declaratory judgment that state courts cannot release the settlement proceeds from the prior lawsuit to any person other than to the "plaintiffs' [sic] attorney for distribution nunc pro tunc to October 2014," (id. at 15);

(3) A cause of action for breach of contract and a corresponding request to enforce the settlement agreement and order defendants to pay the $175,000.00 settlement amount, (id. at 11–13);

(4) A cause of action claiming that defendants' "failure to distribute plaintiff's property" in the form of the settlement proceeds "amounts to a . . . violation of . . . the Fifth and Fourteenth Amendments[,]" (id.);

(5) A cause of action claiming that defendants violated the First Amendment by delaying the decision regarding "plaintiff's notice of waiver of reimbursement," as a form of retaliation and discrimination due to plaintiff's transgender disposition, (id. at 14);

(6) Causes of action involving intentional infliction of emotional distress ("IIED") and negligent infliction of emotional distress ("NIED") directed at plaintiff and caused by (i) defendants' alleged negligent, reckless, and intentionally harmful care of plaintiff's

mother (Dudley); and (ii) defendants' alleged refusal to distribute the settlement proceeds to Dudley before and after her death, (id. at 12–13); and

(7) A possible cause of action based on an alleged breach of fiduciary duties and responsibilities that defendants allegedly owed to plaintiff as Dudley's full time guardian and son, (id. at 13).

All of plaintiff's federal claims are included in the first five causes of action listed above. Additionally, these first five claims all require the enforcement of rights to the settlement agreement. Defendants contend that plaintiff lacks standing to assert any causes of action based on those rights because plaintiff's involvement in the prior suit was only through his position as the holder of power of attorney and as guardian of Dudley. (Defs. Mem. at 4–5.) They claim Dudley's death removes any right plaintiff may have had to enforce the settlement on her behalf in those capacities. (Id.) Defendants are correct. Under New York General Obligations Law section 5-1511, "a power of attorney terminates when . . . the principal" (i.e. the grantor) dies. Additionally, under New York Mental Hygiene Law section 81.36, a guardianship likewise terminates upon the death of the incapacitated person, (i.e., the guarded). See Vellozzi v. Brady, 698 N.Y.S.2d 361 (1999) ("Petitioner's general power of attorney and appointment as guardian were extinguished by operation of law upon her father's death . . . ."). Although plaintiff may have had the right to sue and enforce the settlement agreement on behalf of Dudley during Dudley's lifetime—either as her guardian or based on power of attorney—those rights terminated upon her death. See id. Because plaintiff cannot rely on his previously held power of attorney or guardianship, plaintiff does not have standing to assert the above-listed claims unless he can do so on his own behalf.

Whether plaintiff may assert the above-listed causes of action on his own behalf depends on his position in the prior lawsuit out of which the settlement agreement arose. Plaintiff asserts that his name is included as a "claimant" in the prior lawsuit, and that as a result, his rights to enforce and sue upon a breach of the settlement agreement were not affected by Dudley's death, because his "position" created an "inter vivos trust under power of attorney, [and] confer[red] indefinite property interest through joint tenancies." (See Pl. Opp. at 2.) Although plaintiff alleges in the text of his complaint that he acted as both a representative and joint claimant in the previous litigation, and although the Court is ordinarily required to accept all allegations in a complaint as true, plaintiff has also attached to the complaint several filings from the prior suit that plainly contradict plaintiff's assertions. (See, e.g., Compl. Ex. A–D (demonstrating that plaintiff signed documents in the prior lawsuit only as a representative of Dudley through power of attorney); see also DiFolco, 622 F.3d at 111 (stating that, on motions to dismiss, district courts may consider the facts in the complaint and documents attached to the complaint); J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004) (stating that on a motion to dismiss, courts "may consider affidavits and other materials beyond the pleadings to resolve . . . jurisdictional issue[s]").

Plaintiff has not presented, and the Court also has not found, any evidence or legal authority demonstrating that his power of attorney during Dudley's lifetime created an inter vivos trust designating him as a surviving beneficiary of the settlement proceeds, or that such a power conferred upon him an indefinite property interest through joint tenancies. Additionally, although plaintiff alleges that his position in the prior suit was as a party, the state court attachments to the complaint demonstrate that plaintiff's sole capacity in the prior litigation was through "Power of Attorney for [Dudley]," but never as a plaintiff with personal claims in the suit, (see, e.g., Compl. Ex. A (notice of claim, listing the name of the case as "MARION DUDLEY, by her son and Power

8

of Attorney, GEORGE HEATH, and only stating that the claim for personal injuries was made "on behalf of claimant Marion Dudley"); see also Ex. B–D (proving the same).). See Rozsa, 187 F. Supp. 2d at 128 ("When allegations contained within the complaint are contradicted by documents attached to the complaint, the documents control, and the Court need not accept the allegations contained within the complaint as true.").

Moreover, under New York law, the "terms of a contract may be enforced only by contracting parties or intended third-party beneficiaries of the contract . . . . [M]ere incidental beneficiaries of a contract are not allowed to maintain a suit for breach of the contract." Rajamin v. Deutsche Bank Nat. Trust Co., 757 F.3d 79, 86 (2d Cir. 2014) (citing Mendel v. Henry Phipps Plaza West Inc., 811 N.Y.S.2d 294, 297 (2006)) (emphasis added). In the instant action, plaintiff has not alleged facts sufficient to demonstrate—when compared to the record attached to the complaint—that he may be considered anything more than an incidental beneficiary to the settlement agreement due to his status as Dudley's son and, as such, a potential beneficiary of her estate. Therefore, plaintiff does not have personal rights as a direct party or an intended beneficiary of the settlement agreement, and accordingly, does not have standing to assert the above-listed causes of action.

Additionally, plaintiff does not have standing to sue on behalf of Dudley's estate. Because Dudley is deceased, the right to assert her claims regarding the settlement agreement now belongs only to her estate's personal representative. See Palladino v. Metro. Life Ins. Co., 590 N.Y.S.2d 601, 602 (App. Div. 1992) ("Only a duly appointed personal representative may bring suit on behalf of a decedent" in New York); N.Y. Est. Powers & Trusts Law § 1-2.13 ("A personal representative is a person who has received letters to administer the estate of a decedent."). Plaintiff stated in the complaint that the plaintiff's sister, as the "Administrator of Dudley's

Estate," is currently preparing an action in state court against the defendants to enforce the settlement. (Compl. at 15.) Because plaintiff has not demonstrated that he himself is a "duly appointed personal representative" of Dudley's estate, he does not have standing of his own to sue on the estate's behalf. See Garmon v. Cty. of Rockland, No. 10-CV-7724 (ALC) (GWG), 2013 WL 541380, at *1 (S.D.N.Y. Feb. 11, 2013) ("Since Plaintiff is not the administrator of his son's estate, he lacks standing to sue on his son's behalf.")

Finally, the Court notes that plaintiff's claim for relief for a violation of his First Amendment or even Fifth and Fourteenth Amendment rights based on discrimination and relating to his transgender status is properly dismissed for failure to state a claim since it is not plausible that plaintiff has stated or could state a claim that defendants are retaliating against plaintiff for actions taken by plaintiff in a lawsuit nearly twenty years ago, (Compl. at 5–6). See Twombly, 550 U.S. at 570.

Because plaintiff was not a direct party or an intended beneficiary in the prior suit, and because his abilities to enforce Dudley's rights terminated upon her death, plaintiff lacks standing to bring the above listed causes of action. Defendants' motion to dismiss is therefore granted with respect to the portions of the complaint regarding those claims. Because standing is a "substantive" issue, plaintiff is not granted leave to amend his complaint as any amendment would be "futile." See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (holding that when "[r]epleading would [ ] be futile . . . [s]uch a futile request to replead should be denied").

## II. Subject Matter Jurisdiction

Plaintiff's remaining claims are state law claims for (1) intentional and negligent infliction of emotional distress and (2) breach of fiduciary duties. Although plaintiff may arguably have standing to personally assert such claims, the Court declines to hear them.

10

Despite plaintiff's assertion in the complaint that the Court has subject matter jurisdiction over the action "based on . . . diversity of citizenship pursuant to 28 U.S.C. § 1332," (Compl. at 2), as shown on the face of the complaint, plaintiff, defendant Banks, and defendant School Settlement Home Attendant Services Corp. are all citizens of New York, and thus, the suit lacks complete diversity. (See Compl. at 1-2, 4, 6.) Because all of the federal claims have been dismissed for lack of standing, the Court declines to exercise supplemental jurisdiction over the state law claims. See 28 U.S.C. § 1367(c)(3) ("The district courts may decline to exercise supplemental jurisdiction over a claim . . . if . . . the district court has dismissed all claims over which it has original jurisdiction . . . ."); Chenensky v. New York Life Ins. Co., 942 F. Supp. 2d 388, 391 (S.D.N.Y. 2013) ("The decision whether to exercise supplemental jurisdiction is entirely within the court's 'discretion and is not a litigant's right.'" (citing and quoting Gilmore v. Gilmore, No. 09-CV-6230 (WHP), 2011 WL 5517832, at *2 (S.D.N.Y. Nov. 10, 2011) aff'd, 503 Fed. App'x. 97, 98–100 (2d Cir.2012) (quoting Klein & Co. Futures, Inc. v. Bd. of Trade of City of N.Y., 464 F.3d 255, 263 (2d Cir.2006)). The Court therefore grants defendants' motion to dismiss with respect to those claims. The Court also denies leave to amend as amendment would be futile.

## CONCLUSION

For these reasons, defendants' motion to dismiss is granted and leave to amend the complaint is denied.

SO ORDERED.

Dated: September 30, 2016
Brooklyn, New York

Carol Bagley Amon
United States District Judge